IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

---

**RUBEN CARREON, individually and d/b/a RC FOREST PRODUCTS, LLC**,

        Plaintiff,

v.                                    No. CIV 09-161 BB/CEG

**GOODTIMES WOOD PRODUCTS, INC.**, a Texas Corporation; **JOHN WILLIAMS**, individually and as President of Good Times Wood Products, Inc.; **JAMES W. COOKE and LINDA COOKE**, individually and d/b/a JL ENTERPRISES; **JIM KELLAR**; **ED WEHRHEIM**, individually and in his official capacity as Chairman of the Catron County Commission; The **CATRON COUNTY CITIZENS GROUP**, a New Mexico not-for-profit organization; **WILLIAM AYMAR**, individually and in his official capacity as Catron County Manager, and **RON SHORTES**, individually and in his official capacity as Catron County Attorney,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court for consideration of a motion for summary judgment [Doc. 173] filed by Defendants Wehrheim, Aymar, and Shortes ("County Defendants"). The County Defendants seek judgment in their favor on all counts of the complaint that are directed at them, specifically Counts I, III, IV, VII, and X. Having considered the submissions of the parties and the applicable law, the Court will grant the motion for the reasons discussed below.

Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Medina v. Income Support Div.*, 413 F.3d 1131, 1133 (10th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)). In response, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith*, 475 U.S. 574, 587-88 (1986). To avoid summary judgment, the nonmoving party may not rest upon the mere allegations in the pleadings but must show, at a minimum, an inference of the existence of each essential element of the case. *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016-17 (10th Cir. 2001) (citing *Hulsey v. K-Mart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). When viewing the evidence, the Court must draw reasonable inferences in favor of the non-moving party. *Matsushita*, 475 U.S. at 587.

**Discussion**

The County Defendants are the subject of three federal-law causes of action and several state-law causes of action. Plaintiff maintains the County Defendants discriminated against him on the basis of his national origin, as a Mexican national, and refused to award him a lease of County property as a result. Plaintiff also contends the County Defendants interfered with his contract with a third party, Defendant Good Times Wood Products ("GTWP"), out of discriminatory animus due to his national origin. According to Plaintiff, these actions by the County Defendants violated 42 U.S.C. § 1981. The complaint thus alleges three causes of action against the County Defendants under § 1981: one for straight discrimination in contracting, one for conspiracy to discriminate, and one for discriminatorily interfering with his contract with a third party. The state-law causes of action brought against the County Defendants include tortious

interference with contractual relations, conversion, prima facie tort, and violation of the New Mexico Constitution's prohibition against discrimination on the basis of national origin.

**Federal Claims:** Plaintiff was born in Mexico and moved to the United States when he was three years old.  He has remained a Mexican citizen, although he has lived in New Mexico for many years.  At his deposition and in his briefs he has maintained that the County Defendants discriminated against him because of his Mexican citizenship.  [Doc. 173, Exh. 1, pp. 829-32; Doc. 183, pp. 4, 6]  He specifically disavowed any claim that the discrimination was based on his Hispanic ethnicity.  [*Id.*][1]  Thus, Plaintiff's claim appears to be one arising out of alleged discrimination on the basis of his national origin.

The nature of Plaintiff's claim raises a serious obstacle to his § 1981 claims, although this obstacle was not briefed by either party.  Unlike Title VII, which protects against discrimination on the basis of national origin, § 1981 does not provide a remedy for national-origin-based discrimination.  *See, e.g., Sagana v. Tenorio*, 384 F.3d 731, 739 (9th Cir. 2004); *Anooya v. Hilton Hotels Corp.*, 733 F.2d 48, 50 (7th Cir. 1984); *cf. Manzanares v. Safeway Stores, Inc.*, 593 F.2d 968, 971 (10th Cir. 1979) (noting without contradiction, but without adopting the principle, that a number of cases have held that "national origin" discrimination is not actionable under § 1981).  Plaintiff's federal-law claims are not viable for that reason alone.

The Court has considered the possibility that Plaintiff's claim might be considered a claim of alienage discrimination rather than national-origin discrimination.  Courts have consistently held that alienage, along with race or ethnicity, is a protected characteristic under § 1981. *See Sagana, supra*.  However, the Court's review of the cases indicates that when a specific

---

[1] It is possible this is because the entity that was awarded the lease he sought is a majority-Hispanic business, owned by two Hispanics and one Anglo. [Doc. 173, Exh. 1, p. 220; Doc. 191, Exh. 1, pp. 129-31]

nationality is invoked as the source of the discriminatory acts, the claim is treated as a national-origin claim rather than an alienage claim. On the flip side, when a person's non-citizen status generally is the basis for discriminatory treatment, the claim is an alienage claim. *See, e.g., Sagana* (law restricted employment rights of non-residents generally; claim considered based on alienage discrimination); *Duane v. GEICO*, 37 F.3d 1036, 1042-43 (4th Cir. 1994) (insurance company's policy of refusing to insure non-citizens violated § 1981, because it constituted alienage discrimination); *compare Anooya*, *supra* (§ 1981 claim that plaintiff was discriminated against because he was "of Iraqi background" was national-origin claim and properly dismissed); *Abdulrahim v. Gene B. Glick Co., Inc.*, 612 F.Supp. 256, 262 (D.C. Ind. 1985) ("camel jockey" comments indicated discrimination was based on plaintiff's Syrian nationality, rather than alienage). In this case, as discussed above, Plaintiff specifically maintains he was discriminated against because he is a Mexican citizen. This is a national-origin-discrimination claim, and is not actionable under § 1981.

Assuming for the sake of argument that Plaintiff's status as a Mexican citizen might be protected by § 1981, his claims face another insurmountable obstacle. This is because Plaintiff produced no evidence at all to indicate that any of the County Defendants knew about his citizenship before this lawsuit was filed. All three County Defendants submitted affidavits averring they did not know Plaintiff is a Mexican citizen until the subject came up during this lawsuit. [Doc. 173, Exhs. 6, 7, 8]  To contradict these assertions, Plaintiff offered only three pieces of evidence: first, his own assertion that it is "well known" in the community that he and his wife are Mexican citizens; second, that Defendant Wehrheim's wife taught at the same school attended by Plaintiff's children; and third, that Plaintiff's daughter was friends with the granddaughter of Jim Kellar, a former Defendant in this case, and Plaintiff's daughter informed

the granddaughter that Plaintiff and his wife are from Mexico. [Doc. 173, Exh. 1, pp. 832, 833; Doc. 183, Exh. 6] It is plain that these assertions are insufficient to raise a genuine issue of fact as to whether any of the County Defendants knew Plaintiff was a Mexican national at the time they allegedly discriminated against him.

As a matter of common sense, a person cannot be said to have discriminated on the basis of a certain status if the person was unaware of the existence of that status. This principle has been stated in a number of different opinions, in varying discrimination contexts. *See, e.g., Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 81 (2d Cir. 2005) (prima facie inference of discriminatory intent based on age can only be drawn if there is some evidence indicating employer knew there was an age discrepancy between plaintiff and the younger individual who was promoted or hired); *Lubetsky v. Applied Card Systems, Inc.*, 296 F.3d 1301, 1305-06 (11th Cir. 2002) (employer cannot intentionally discriminate against an individual based on religion unless the employer knows the individual's religion; summary judgment appropriate for employer because only evidence was that decisionmaker did not know plaintiff's religion); *Clay v. Holy Cross Hospital*, 253 F.3d 1000, 1007 n. 7 (7th Cir. 2001) (absent showing that supervisor actually knew of plaintiff's pregnancy, plaintiff would not have established the first element of a prima facie case of pregnancy discrimination). The Tenth Circuit has pointed to the same principle in the context of a retaliation case. *See Petersen v. Utah Dept. of Corrections*, 301 F.3d 1182, 1188 (10th Cir. 2002) (employer's action against an employee cannot be because of that employee's protected opposition unless the employer knows the employee has engaged in protected opposition). As discussed above, in this case there is no evidence that any of the County Defendants knew Plaintiff is a Mexican citizen at the time of the alleged discriminatory actions; for that reason, Plaintiff cannot establish his claims of discrimination under § 1981.

**State-Law Claims:** Plaintiff's state-law claims against the County Defendants consist of claims for tortious interference with contract, conversion, prima facie tort, as well as a claim for violation of the New Mexico Constitution.[2] In the brief in chief, Defendants argued they are immune from these claims under the New Mexico Tort Claims Act ("TCA"), NMSA §§ 41-4-1 *et seq.* In response, Plaintiff appears to agree that as state-law tort claims, these causes of action cannot survive.[3] [Doc. 183, pp. 18-19] However, he attempts to preserve them by arguing that discriminatorily interfering with his contract with GTWP falls under the rubric of 42 U.S.C. § 1981. The Court agrees that under some circumstances interference with a third-party contract, if based on race or alienage discrimination, can support a § 1981 claim. *See Harris v. Allstate Ins. Co.*, 300 F.3d 1183, 1197 (10th Cir. 2002) (relief may be had under § 1981 where a party discriminatorily uses its authority to preclude an individual from securing a contract with a third party). However, this aspect of Plaintiff's claims fails for the same reasons as those discussed in the preceding section – Plaintiff's national origin is not a protected status under § 1981, and even if it was, there is no evidence the County Defendants knew about that status at the time they took the actions about which Plaintiff now complains.

---

[2]Plaintiff also included a "claim" for punitive damages, which is not a separate cause of action but merely a possible element of allowable damages. *Sanchez v. Clayton*, 877 P.2d 567, 572-73 (N.M. 1994) (punitive damages cannot be awarded unless plaintiff establishes an underlying cause of action). There was also some discussion of a "claim" for joint liability, which again is not an actual cause of action but a question of who will be liable for what damages.

[3]If Plaintiff did not agree, his position would not have merit in any event. Nothing in the TCA waives immunity for government employees, other than law enforcement officers, who allegedly commit tortious interference with contract, conversion, or a prima facie tort.

**Conclusion**

It is true that Plaintiff has presented evidence from which a fact-finder could conclude the County Defendants favored another firm over his company in awarding the lease in question. Plaintiff has also presented evidence that would allow an inference that certain County Defendants, perhaps unintentionally but perhaps not, caused GTWP to question Plaintiff's company's legal standing to be operating where it was operating. However, Plaintiff has not presented any evidence that would allow a determination that the County Defendants' actions constituted a violation of 42 U.S.C. § 1981. For that reason, Plaintiff's federal claims as well as the state-law claims that have been re-cast as federal claims are subject to summary judgment.

**ORDER**

Based on the foregoing Memorandum Opinion, it is ORDERED that the motion for summary judgment (Doc. 173) filed by the County Defendants be, and hereby is, GRANTED. Under Rule 54(b), F.R.C.P., this order is not a final, appealable judgment; such a judgment will be entered at the conclusion of this case.

**BRUCE D. BLACK**
United States District Judge